, D. W. JONES, Appellee, v. J. J. LORACK, Appellant.

BROKERS: Commission—Agreement to Divide—Good Faith of Part-
1   ners—Evidence.   Evidence reviewed on the issue whether brok-
    ers had modified their agreement to divide the commission in a
    land deal, and the effect of a breach of good faith on the part
    of defendant, and held to support a verdict for plaintiff.

TRIAL: Verdict—Impeachment—Affidavit of Juror.   A verdict may
2   not be impeached by the affidavit of a juror that he agreed to
    the verdict against his judgment, because of extreme weariness.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

FRIDAY, FEBRUARY 18, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION to recover from the defendant one half of the
alleged commission or profit in a certain transaction alleged
to have been handled by plaintiff and defendant as a joint
enterprise, the full amount of such commission or profit
having been paid to the defendant alone.   Upon trial to a
jury, a verdict was rendered for the plaintiff and a judgment
entered thereon.   The defendant appeals.—*Affirmed.*

*W. J. Baldwin* and *A. E. Maine,* for appellant.

*Edwin B. Wilson,* for appellee.

EVANS, C. J.—I.   The parties hereto were separately
engaged in business as real estate agents at Iowa City at the
time of the transaction herein involved.   Decker was a land-
owner who wished to sell his farm, consisting of 258 acres.
He listed it for sale with Jones at a net price to the owner
of $119 per acre, and with the privilege to Jones to receive
as a commission any amount above such net price for which
he could sell the farm.   Lorack had a customer, Wesley, who
wanted to buy a farm.   Lorack introduced Wesley to Jones,

and Jones took him to see the Decker farm. Jones and Lorack orally agreed with each other that they would list the farm to Wesley at $125 per acre and divide the profits. Wesley was willing to pay the price, but was unwilling to accede to the terms of the sale. These terms required $2,000 of the purchase money to be paid down, and about $13,000 on the first day of March next following, the balance of the purchase price to be secured by a first mortgage upon the farm. Wesley was the owner of certain corporation stock and certain mortgages which he wished to utilize in the purchase, and which comprised the only securities which he could offer for the purpose of meeting the required payments. The listing with Jones was to be for a few days only. The parties made considerable effort to find a lender for Wesley who would accept his securities as collateral. In this they were unsuccessful. Thereupon, Decker withdrew his land from the listing and advertised it, or was about to advertise it for sale at public auction. Upon the importunity of the parties hereto, he extended to them the grace of a little more time and fixed its termination at Monday noon, October 6, 1913. In the meantime, Wesley offered to increase the price to $130 per acre if the parties could procure someone to finance the deal with his securities. Before the time limit had expired, Lorack notified Decker that the farm was sold. He himself financed the deal. He advanced the sum of $2,000 necessary to make the first payment. He also secured the second payment of $13,000, March 1, 1914. A contract of sale to Wesley was thereupon executed by Decker and was subsequently performed. There is no substantial dispute in the evidence except at one point. Lorack testified that, before he determined to finance the deal himself, Jones orally agreed with him that he would accept $100 for himself and stand aside. The substance of this contention was denied by Jones. He testified that, after their efforts at borrowing the money for Wesley had failed, Lorack told him that one Maine would take the land at Decker's price and pay to Jones and Lorack $100 each.

Lorack proposed to accept this arrangement, and Jones acceded thereto. The contention for Lorack is, therefore, that Jones was entitled to $100 and no more. The contention for Jones is that Lorack concealed from him the fact that he was financing the deal himself with the view of making the entire profit, and that Jones' agreement to accept the $100 was on the condition that Maine was buying the land, and upon the assurance that this was the best that could be done with him.

The principal error assigned in the brief of appellant relates to the giving by the trial court of Instruction No. 5, which was as follows:

1. BROKERS: commission: agreement to divide: good faith of partners: evidence.

"5. You are instructed that both parties agree that Jones had this Decker farm listed for sale and that he and Lorack made an agreement that if Lorack would furnish a purchaser that they would divide equally what was made after deducting the expenses, if they succeeded in making a sale. Both sides also agree that the property was sold to Wesley for $130 per acre and that Decker was to receive $120 an acre for his farm. Both sides also agree that Decker took the farm out of their hands and advertised it for sale at public auction and that later he placed it back in their hands for sale and gave them until noon Monday, October 6, 1913, to make sale of the property and allow them all they received for the farm over and above $120 per acre. And it is agreed that the terms of sale were to be $2,000 cash on the signing of the contract and the balance of what it would take to make 40% of the purchase price was to be paid in cash at the time the transfer was made or to be made in March, 1914, and that Decker would take a mortgage back for the balance of the purchase price. It is also agreed that there was a sale made of the farm upon these terms to the said Wesley and there is no controversy but what Lorack raised the 40% of the purchase price himself and that Jones put no money into the deal.

"Now, you are instructed that under these facts Jones would be entitled to recover one half of the $10 per acre, less

expenses, in this action unless Jones and Lorack made an agreement before the sale of the land to Wesley was consummated that if Lorack went ahead and raised the money with which to put the deal through that Jones would accept $100 as his share of the commission of profit, and if this is true Jones could not recover in this action more than $100, but he would be entitled to recover that amount.''

The substance of the complaint is that this instruction stated the facts not in accordance with the evidence. We have read the evidence with much care, and find the recital of facts in this instruction to be strictly true to the record, as far as they go. Its legal conclusion is not complained of. It is doubtless true, as argued, that, if Lorack financed this deal alone, and if Jones refused to finance it, the verdict results in an inequitable division of the profits. But Lorack could not change his attitude towards and his interest in the transaction, without the knowledge and consent of Jones. While they were working together, their interests were identical and joint, and they had a right to rely upon each other's judgment and conduct. When Lorack determined to carry the transaction alone and to make a profit therefrom for himself alone, his interest ceased to be mutual and joint and became adverse. If Lorack did disclose to Jones his purpose to finance the deal himself on condition that Jones would accept $100, then their agreement was good and Jones should recover no more. The trial court so instructed the jury in effect. In order to return a verdict for the plaintiff, the jury necessarily found that Lorack had not disclosed to Jones the fact of his changed interest in the transaction.

II.   Complaint is made that the verdict was obtained by practical duress of the jury by the court, in that the court kept the jury to its deliberations an undue length of time. The jury retired for a consideration of their verdict at 10:45 A. M. one day and returned a verdict at 8:00 P. M. of the next day. At 4:00 P. M. of the second day,

2.  TRIAL: verdict: impeachment: affidavit of juror.

they had reported to the court that they could not agree. Additional instructions were given, and the jury were sent out for further deliberation. At that time, the court said to them: "You are here to decide this case and may retire to your room." In support of the motion for new trial, the affidavit of one juror was filed, wherein the affiant stated, in substance, that he was physically unable to stand further deliberation, and that other members of the jury also were sick, and out of sympathy for such, and because of his own weariness, he yielded to an agreement which was not in accord with his judgment. It is not claimed that these conditions were made known to the court before verdict and that the court therefore erred in disregarding them. No facts are shown in the affidavit which of themselves would impeach the verdict, except the mental attitude of the affiant himself. The verdict is not subject to impeachment in such manner. We find no error in the record.

The case turns wholly upon the question of fact. If the defendant did fairly disclose to the plaintiff his purpose to finance the deal himself, then he ought not to be held to pay any greater sum than the $100 promised; and, on the other hand, if he withheld such disclosure and represented Maine as the purchaser, such agreement was of no avail to him. His own evidence would have justified a verdict in his favor. There was much in the circumstances to corroborate him, but he lost the issue before the jury. The judgment of the trial court must therefore be affirmed.—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.